## J. EDWARD MEYERS v. TRI-STATE AUTOMOBILE COMPANY.[1]

March 7, 1913.

Nos. 17, 902—(193).

**Negligence of servant — verdict sustained by evidence.**
    1. The driver of an automobile drove over an embankment on the left side of the road. It was broad daylight. The road was hard, dry, and smooth,

[1] Reported in 140 N. W. 184.

---

Note.—The authorities on the question who is responsible for acts of driver furnished with a hired vehicle are collated in notes in 13 L.R.A.(N.S.) 1122; 25 L.R.A.(N.S.) 33; and 38 L.R.A.(N.S.) 973.

As to who is responsible for negligence of chauffeur operating a leased or demonstrating car, see note in 40 L.R.A.(N.S.) 457.

For the question whether one in charge of a vehicle under a contract purporting to be a bailment or a lease may be regarded as a servant of the owner as to a third person injured by the vehicle, see note in 6 L.R.A.(N.S.) 544.

and wide enough for two vehicles. There was no obstruction, and no other vehicle on the road. The car was in good condition. There was evidence that he had at times before been driving carelessly and too near the edge of the road. It was a hot day, and the driver's explanation was that he was taken with a period of dizziness which came on suddenly, and lasted but a moment. *Held*, that the question of his negligence was for the jury, and that the evidence was sufficient to sustain their finding that he was negligent.

**Liability of owner of car for driver's negligence.**

2. Where a dealer in automobiles and owner of a garage lets a car for hire and furnishes a driver, and the hirer exercises no control or supervision over the driver, except to direct him where to go, and what route to take and to caution him against improper driving, the owner is responsible for the negligence of the driver, and the hirer may recover from the owner in damages for an injury caused by the driver's negligence.

Action in the district court for Hennepin county to recover $10,-000. The complaint alleged that plaintiff was a passenger for hire in an automobile then operated by defendant as a common carrier for hire, and through its negligence the automobile was driven out of the road and overthrown while going at a high rate of speed, and in consequence plaintiff was injured. The defense was a general denial. The case was tried before Dibell, J., who denied defendant's motion for a directed verdict, and a jury which returned a verdict for $3,000 in favor of plaintiff. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Affirmed.

*Edmund A. Prendergast, Henry C. Flannery* and *Brown & Guesmer,* for appellant.

*Larrabee & Davies* and *Jay W. Crane,* for respondent.

HALLAM, J.

Plaintiff and one Walker hired of defendant an automobile, with a driver, to take a country trip. Defendant was a dealer in automobiles, and did not ordinarily let its vehicles for hire. The car used on this occasion was a two-seated five passenger car. It was in good condition. The driver was a generally competent driver. Plaintiff sat in the rear seat with some ladies. Walker sat in the front seat beside the driver. He directed the driver where to go, and what road

to take, and cautioned him not to make fast time. There was evidence that at some time during the drive the driver was warned not to drive so near the edge of the road. Further than that no one of the party exercised any direction over him. They drove to Osceola, Wisconsin. On the return trip the car ran over an embankment, and overturned, causing plaintiff the injury complained of. The jury found for plaintiff. Defendant appeals from an order denying an alternative motion for judgment or for a new trial.

Two questions are raised on this appeal. Defendant contends: (1) There is no evidence that the driver was negligent. (2) If he was negligent, defendant is not responsible therefor.

1. There was ample evidence of the negligence of the driver. He was traveling at a moderate rate of speed on a hard, smooth, dry, road, wide enough for two automobiles to pass each other. It was broad daylight, on a bright, hot day. The car and its machinery were in good condition. The driver permitted the car to roll over an embankment on the left side of the road. There was evidence that he had been driving carelessly at times, that he had been cautioned before about going near the edge of the road and also about going too fast. The driver's explanation of the cause of the accident is not very satisfactory. He said: It was a "sort of a period of dizziness, which I don't suppose I would ever realize to find out what it was if Mr. Walker hadn't called my attention to it, but I don't remember anything outside of the last. I remember I was looking ahead at the road, and from that time on until the accident occurred it was blank to me. I don't know how far. It might have been 30 feet. It might have been five feet." He admitted that he had been all right immediately before and that he was all right immediately after the occurrence. Defendant contends that he must have been overcome by exhaustion and heat. Clearly the evidence did not establish any such theory as a matter of law. Taking all the evidence together, it was clearly sufficient to sustain the finding of the jury that the driver was negligent.

2. Defendant contends that it is not liable to plaintiff for the negligence of the driver; that its only duty was to use reasonable care in the selection of a driver. This is not the ordinary rule where one

person is injured by the negligence of the servant of another. The general rule in tort actions is that: "The principal is liable for the acts and negligence of the agent in the course of his employment. * * * So long as he stands in the relation of principal or master to the wrongdoer, the owner is responsible for his acts." Hunt, J., in Railroad Co. v. Hanning, 15 Wall. 649, 657 (21 L. ed. 220), and that in any given case "that person is undoubtedly liable who stood in the relation of master to the wrongdoer,—he who had selected him as his servant, from the knowledge of or belief in his skill and care, and who could remove him for misconduct and whose orders he was bound to receive and obey." Parke, B., in Quarman v. Burnett, 6 M. & W. 497, 508. The rule of respondeat superior "is founded upon public policy and convenience; for in no other way could there be any safety to third persons in their dealings, either directly with the principal or indirectly with him through the instrumentality of agents. In every such case the principal holds out his agent as competent, and fit to be trusted; and thereby in effect he warrants his fidelity and good conduct in all matters within the scope of the agency." Story, Agency, § 452.

In other words, the rule of respondeat superior is one of general application in case of master and servant. If it does not apply in this case, then either the relation of master and servant did not exist between the defendant and the driver, or else this case is an exception to the general rule. The relation of master and servant did exist. Defendant's counsel do not in terms contend otherwise, but they do contend that plaintiff and Walker assumed full control of the machine and the driver. If this were true, then the driver ceased to be the servant of the defendant, and became the servant of the hirer of the automobile, for the right of control is the test in determining where the relation of master and servant exists. Follman v. City of Mankato, 35 Minn. 522, 527, 29 N. W. 317, 59 Am. Rep. 340, citing Bennett v. New Jersey R. & T. Co. 36 N. J. L. 225, 13 Am. Rep. 435. See, also, Wood, Master and Servant, § 317.

Of course, the general master may lend his servant to another, and while the servant is engaged in the business of the other, and in all respects subject to his direction and control, he becomes the servant

of the new master. The test in such case is whether such person is in control as a proprietor so that he can at any time stop the work or continue it and determine the way in which it shall be done, not merely in reference to the result to be reached, but in reference to the method of reaching the result as well. Shepard v. Jacobs, 204 Mass. 110, 90 N. E. 392, 26 L.R.A.(N.S.) 442, 134 Am. St. 648. In Driscoll v. Towle, 181 Mass. 416, 419, 63 N. E. 922, Holmes, C. J., in discussing this subject, said: "There is a general consensus of authority that, although a driver may be ordered by those who have dealt with his master to go to this place or that, to take this or that burden, to hurry or to take his time, nevertheless in respect to the manner of his driving and the control of his horse he remains subject to no orders, but those of the man who pays him. Therefore he can make no one else liable."

In this case there is no evidence that plaintiff or even Walker did assume control. Plaintiff exercised no supervision or direction whatever, and Walker did so only in directing the driver where to go and what route to take. Their cautions not to drive fast, and not to drive near the edge of the road, cannot be considered an exercise of control. Neither of these men ever exercised the slightest control over the operation of the automobile or over its mechanism. So far as appears, neither of them had sufficient knowledge or training to do so, and it was never contemplated that they should. The management of an automobile can properly be trusted only to a skilled expert. The law does not permit such a vehicle to be operated except by a licensed chauffeur of approved competency. The danger, of injury to the property of the owner, of injury to the chauffeur, his servant, and of injury to the persons and property of others, is such as to make it of the highest importance that care should be exercised in the operation of the machine, and that its control and management should not be given over to the unexperienced hirer. We cannot hold under the facts existing in this case that there was any such relinquishment of control by the owner. Shepard v. Jacobs, 204 Mass. 110, 90 N. E. 392, 26 L.R.A.(N.S.) 442, 134 Am. St. 648. The driver of defendant's automobile did not in this case become the servant of plaintiff. The relation of master and servant

did exist between defendant and the driver. There is no occasion to make an exception here to the general rule of respondeat superior and the general rule of liability of the master for negligence of the servant should apply.

These propositions are amply sustained by authority.

In Gerretson v. Rambler, 149 Wis. 528, 136 N. W. 186, 40 L.R.A. (N.S.) 457, it was held that a chauffeur sent by the owner of a garage to operate an automobile leased for a pleasure ride, and who obeys the directions of the lessee merely as to routes, is the servant of the owner of the garage, and the latter will be liable for injury inflicted upon occupants of the car through the chauffeur's negligence.

In Johnson v. Coey, 237 Ill. 88, 86 N. E. 678, 21 L.R.A.(N.S.) 81, plaintiff and others were riding in an automobile which they had hired of defendant, who also furnished a driver. The automobile struck the rear end of a street car, and plaintiff was injured. It was held that, "if the driver's negligence in operating the machine was the cause of the accident, the appellee was entitled to recover," and that the jury were properly so instructed.

In Routledge v. Rambler (Tex. Civ. App.) 95 S. W. 749, plaintiff was riding as a guest of others who had hired an automobile and chauffeur. It was held she was entitled to recover for an injury caused by the negligence of the chauffeur.

In Cartwright v. New Orleans, 131 La. 210, 59 South. 124, a collision between a livery carriage and a street car was held due to the negligence of the driver of the carriage. The driver was an employee of the owner of the carriage. The owner denied liability on the ground that he had hired the outfit to an undertaker, who in his turn had hired it to a lady, who in her turn had hired one of the seats to plaintiff. There was no special contract as to the control of the driver. It was held that the liveryman was liable, that the driver was his servant, and that, "as long as the relation of master and servant exists, the liability of the former for the negligence of the latter continues in full force and effect."

In Frerker v. Nicholson, 41 Colo. 12, 92 Pac. 224, 13 L.R.A. (N.S.) 1122, 14 An. Cas. 730, an undertaking company hired a carriage and driver from a livery stable to carry those attending a fu-

neral to the cemetery, and then to their homes. Plaintiff was a passenger in the carriage, and was injured by the negligence of the driver. The undertaking company exercised no control over the driver further than to tell him where to drive. It was held that the owner, and not the hirer, was liable.

In Crampton v. Ivie Bros. 126 N. C. 894, 36 S. E. 351, plaintiff was a passenger in a livery carriage driven by a servant of the owner. He was injured in a collision with another vehicle. The court in the course of a discussion of the rights of the respective parties said: "If the negligence of his driver was the sole proximate cause of his injury, he cannot recover from the defendant but must look to the driver or the driver's master." See, also, Perez v. New Orleans, 47 La. An. 1391, 17 South. 869.

The books are full of cases holding the owner of a vehicle liable for the damage caused by the negligence of his driver to the person or property of a third person. Thomas v. Armitage, 111 Minn. 238, 126 N. W. 735. The question of the relation between the hirer of a vehicle and a driver furnished by the owner has also been a prolific subject of controversy in cases where a collision occurs with another vehicle by reason of the negligence of the drivers of both, and where a passenger in one sues the owner of the other vehicle for damages. In the early case of Thorogood v. Bryan, 8 C. B. 115, the court of common pleas held that in such case the negligence of the driver is imputable to the passenger, and that he cannot recover. This rule was followed in a few American cases, but it has been repudiated in the great majority of jurisdictions, including Minnesota. Follman v. City of Mankato, 35 Minn. 522, 29 N. W. 317, 59 Am. Rep. 340; Cotton v. Willmar & S. F. Ry. Co. 99 Minn. 366, 109 N. W. 835, 8 L.R.A.(N.S.) 643, 116 Am. St. 422, 9 An. Cas. 935; Little v. Hackett, 116 U. S. 366, 6 Sup. Ct. 391, 29 L. ed. 652; 29 Cyc. 548; Shultz v. Old Colony Co. 193 Mass. 309, 79 N. E. 873, 8 L.R.A. (N.S.) 597, and note, 118 Am. St. 502, 9 An. Cas. 402.

The principle applicable in these and similar cases is the same principle applicable here. If the driver by the same act of negligence causes damage to the hirer and also to the vehicle of another, there is no principle on which the owner can be held liable to one and not

to the other; or, if both drivers are negligent, there is no principle on which the hirer can be imputed with the negligence of the driver of his vehicle in an action against one owner and not in an action against the other. This is made clear in the opinion of Justice Field in Little v. Hackett, 116 U. S. 366, 6 Sup. Ct. 391, 29 L. ed. 652, supra. On page 379 [6 Sup. Ct. 397, 29 L. ed. 652], it is said:

"Those on a hack do not become responsible for the negligence of the driver if they exercise no control over him further than to indicate the route they wish to travel or the places to which they wish to go. If he is their agent so that his negligence can be imputed to them to prevent their recovery against a third party, he must be their agent in all other respects, so far as the management of the carriage is concerned, and responsibility to third parties would attach to them for injuries caused by his negligence in the course of his employment. But * * * responsibility cannot, within any recognized rules of law, be fastened upon one who has in no way interfered with and controlled in the matter causing the injury. From the simple fact of hiring the carriage or riding in it no such liability can arise. * * * 'If the law were otherwise,' as said by Mr. Justice Depue * * * 'not only the hirer of the coach, but also all the passengers in it, would be under a constraint to mount the box and superintend the conduct of the driver in the management and control of his team.' "

In another case it is said: "If the negligence of such agent is to be attributed to the passenger for one purpose, it would be entirely arbitrary to say that he is not to be affected by it for other purposes. * * * Under the circumstances in question, the passenger is a perfectly innocent party having no control over either of the wrongdoers, and I can see no reason why, according to the usual rule, an action will not lie in his behalf against either or both of the employers of such wrongdoers." Bennett v. New Jersey, 36 N. J. L. 225, 227, 13 Am. Rep. 435.

In Follman v. City of Mankato, 35 Minn. 522, 525, 29 N. W. 317, 59 Am. Rep. 340, a similar case, Dickinson, J., applies the principle that "a recovery may be had against any of several wrongdoers whose concurrent acts have produced injury to the plaintiff."

Of course, the hirer may in all such cases be chargeable, and be himself without remedy against the owner, by reason of his own conduct, as by taking the actual management of the vehicle or by ordering the servant to drive in a particular manner which occasions the damage complained of. New York v. Steinbrenner, 47 N. J. L. 171, 54 Am. Rep. 126. In such case the hirer is answerable, not as master, but rather as the procurer and cause of the wrongful act. Taft, J., in Byrne v. Kansas City, 61 Fed. 605, 9 C. C. A. 666, 24 L.R.A. 693, and Little v. Hackett, 116 U. S. 366, 379, 6 Sup. Ct. 391, 29 L. ed. 652. There is no such situation in this case.

In the absence of some such facts, the hirer is not chargeable with the negligence of the driver, and he may charge the owner therewith. The decisions which hold otherwise present no very satisfactory reason for so holding. In some cases, following Thorogood v. Bryan, supra, the decision is based either on the theory of an agency or of an unexplained "identity of position" between the hirer and the driver. In Cuddy v. Horn, 46 Mich. 596, 602, 10 N. W. 32, 41 Am. Rep. 178, it is intimated that there is a species of assumption of risk, that "in the case of a private conveyance the driver is under the control and directions of the passenger, and, if not, the latter may well decline to intrust his safety farther in such conveyance." These theories are all repudiated in Follman v. City of Mankato, supra. As to the Michigan case, it is said (p. 528) this "is suggestive of a reason for holding the passenger to be himself guilty of negligence, under some circumstances —as if he consents to ride with a person known to be reckless, or unskilful—but it suggests to our minds no reason for imputing the negligence of the driver to the passenger if in fact he is not himself personally chargeable with any imprudence, and, in fact, has no authority over the driver."

Defendant's counsel contend that the rule in case of livery stable keepers is that the proprietor is not liable to a hirer for negligence of a driver furnished by the liveryman with his team, and they urge that the same principle requires a like decision here. We are not prepared to say that the cases are parallel, but, even if so, there is little authority to sustain the rule for which defendant contends. The only text cited by counsel in support of it is 19 Am. & Eng. Enc. of

Law, (2d ed.) 434, where it is said: "If an accident occurs as a result of the way in which the driver performs his duties, the liveryman will be liable for damages when and only when he has failed to exercise ordinary care and skill in the selection of the driver." The author cites Payne v. Halstead, 44 Ill. App. 97, and Benner v. Busson, 58 Ill. App. 17. The cases cited do not bear out the text. In Payne v. Halstead, 44 Ill. App. 97, a verdict for plaintiff was set aside because the court instructed the jury that the defendant liveryman was a common carrier, and that he was bound to exercise the highest degree of care in the performance of the duties required of him. The appellate court repudiated this rule, and held that the defendant was not a common carrier, but a private carrier, and that he was chargeable only with the usual skill, care, and diligence ordinarily exercised by those engaged in the same pursuit. There is some language in the opinion that tends to support defendant's contention, but it expressly held (p. 104) that: "The question whether the driver exercised the care and skill in the management of the team and coach that prudent and cautious men experienced in that business are accustomed to use under similar circumstances should have been left to the jury to determine."

In Benner v. Busson, 58 Ill. App. 17, a recovery by plaintiff against a carriage owner was affirmed. It was held that the evidence established negligence as averred in the first count of the complaint, which alleged that the defendant furnished an old, unskilful, and negligent driver, and that plaintiff was injured by his negligence. The court held that it was the duty of appellant to furnish a driver competent, skilful, and careful, and to use that care, vigilance and foresight as would reasonably guard against and prevent accident.

Defendant's counsel also cite McGregor v. Gill, 114 Tenn. 521, 86 S. W. 318, 108 Am. St. 919. In that case the owner of a carriage was held not liable to the hirer for injury caused by the negligence of the driver furnished by him. But the authority of this case is weakened by the fact that the hirer refused to accept any of the usual drivers of defendant, and agreed upon the selection of one not regularly in defendant's employ.

Both on principle and authority we decline to follow the rule

that the defendant is liable only for the exercise of care in the selection of the driver. We apply the ordinary rule of respondeat superior to this case, and hold that where a dealer in automobiles and owner of a garage lets a car for hire and furnishes a driver, and the hirer exercises no control or supervision over the driver except to direct him where to go and what route to take, and to caution him against improper driving, the owner is responsible for the negligence of the driver, and the hirer may recover from the owner in damages, for an injury caused by the driver's negligence.

The fact that the defendant only occasionally let automobiles for hire does not appeal to us as important. The rule does not depend on the frequency with which such an act is done.

With the liability of an owner for injury to a gratuitous guest we are not here concerned.

Order affirmed.