## HARRY H. CHAPMAN v. PEOPLES ICE COMPANY.[1]

March 13, 1914.

Nos. 18,454—(279).

**Guarding openings in ice.**

1. Plaintiff owned a team and had in his employ a driver. He hired both team and driver to defendant to harvest ice at a fixed sum per day.

1 Reported in 145 N. W. 1073.

---

Note.—The authorities on the question which of two or more persons is master of third are discussed in an elaborate note in 37 L.R.A. 33. And as to whether one in charge of a vehicle under a contract purporting to be a bailment or a lease

While plaintiff was driving the horses they stepped into an unguarded hole in the ice and were drowned. A statute of this state requires every person cutting ice to surround openings in the ice with a fence or guard sufficient to warn all persons of the same.

There was evidence that defendant was negligent.

The statute applies to this case.

The question whether the driver was negligent was for the jury.

**Charge to jury.**

2. The court erred in charging the jury that they might find that the driver was the employee of the defendant and that defendant was responsible for his negligence. The principle that, when an employee is given over unreservedly to the service of another, that other becomes for the time being his master and responsible for his acts, is not applicable to the facts of this case.

**Servant of two masters.**

3. The driver might at the same time be the servant of plaintiff in doing some things, and the servant of defendant in doing others. The precise question here is whether or not, in the specific detail of managing and handling the team, the driver became the servant of defendant.

**Duty of temporary master.**

4. One to whom the employee of another is temporarily hired has the responsibility of a master only in so far as he may exercise the authority of a master. The test is whether the wrongdoer is under his control when doing the particular act out of which the injury arose, both in reference to the result to be reached, and in reference to the method of reaching the result.

**Master and servant.**

5. Where the owner of a team hires out the team and a driver to another, the hirer having under the contract nothing to do with the driving of the team, the relation of master and servant still exists between owner and driver as regards the driving and care of the team.

Action in the municipal court of St. Paul to recover $500. The

may be regarded as a servant of the owner as to a third person injured by the vehicle, see note in 6 L.R.A. (N.S.) 544.

On the question who is responsible for acts of driver furnished with a hired vehicle, see notes in 13 L.R.A. (N.S.) 1122; 16 L.R.A. (N.S.) 816; 25 L.R.A. (N.S.) 33; and 38 L.R.A. (N.S.) 973. And as to who is responsible for negligence of chauffeur operating a leased or demonstrating car, see notes in 40 L.R.A. (N.S.) 457 and 44 L.R.A. (N.S.) 113.

complaint alleged that while defendant company was cutting and removing ice from Bass lake it did not maintain any fence or guard at the openings made in the ice and waters until the ice had again formed in such openings to the thickness of six inches, as by law required, and solely by reason of the negligence of defendant in the use of plaintiff's horses they were drowned. The case was tried before Finehout, J., who denied defendant's motion for a directed verdict, and a jury which returned a verdict in favor of plaintiff for the amount demanded. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Reversed and new trial granted.

*J. F. Fitzpatrick* and *R. G. O'Malley,* for appellant.
*Percy D. Godfrey,* for respondent.

HALLAM, J.

Defendant is in the ice business. In the winter time it cuts ice on Bass lake near St. Paul. Plaintiff lives near Bass lake. In December, 1912, plaintiff owned a team of horses and had in his employ a man named Bruener. Defendant solicited the hire of plaintiff's team for use in cutting and harvesting ice on Bass lake. Plaintiff went to the foreman and negotiated for the hire of the man and team at $3.75 per day. The man was paid by plaintiff and he brought the team every night to plaintiff's barn. When the man and team were on the ice they were subject to the order and direction of defendant. Sometimes they scraped snow and sometimes they plowed ice, according as they were directed. Plaintiff's man, however, drove the team, and it was at all times in his personal charge. Defendant had not, so far as appears, any authority as to the particular manner of his driving, or as to the care or management of the team. While Bruener was driving from one part of the ice field to another with the team hitched to a scraper, he drove into a hole, in no manner guarded or fenced, from which ice had been taken the week before, and over which a coating of ice about three inches thick had been formed. This thin ice was about an inch lower than the thick ice adjoining. The ice was partially covered with fresh snow, which in some measure obscured the line of demarcation between perfect safe-

ty and fatal danger. The horses were drowned. There is statute of this state which reads as follows:

"Every person cutting ice in or upon any waters wholly or partly in the state, for the purpose of removing the ice  *   *   *   shall surround the cuttings and openings made with fences or guards sufficient to warn all persons of the same, and shall maintain such fence or guard until the ice has again formed in such openings to the thickness of at least six inches." G. S. 1913, § 8781.

The trial court submitted to the jury the question of negligence of defendant, charged them that a violation of this statute constitutes negligence in the case, submitted to the jury the question whether the driver was the servant of plaintiff or defendant, and instructed them that if they found that he was the servant of defendant, then defendant was liable for his negligence.

There was ample evidence of negligence on the part of defendant in leaving this hole in the ice unguarded.

The court properly instructed the jury that the statute above quoted applies to this case. The design of the statute is by its terms to warn "all persons" of pitfalls. Plaintiff has no trouble in coming within this classification.

The question whether Bruener, the driver, was negligent, was fairly a question for the jury.

2. The trial court erred in charging the jury, in effect, that they might find that defendant was responsible for the negligence of Bruener, the driver. Bruener was plaintiff's hired man, hired to drive plaintiff's team. There was no evidence upon which defendant could be held responsible for his negligence in the manner in which he drove the team. Plaintiff contends that although Bruener was in plaintiff's general employ, he was loaned to defendant for this occasion, and so became the servant of defendant, and he invokes the principle that when an employee is given over unreservedly to the service of another, that other becomes for the time being his master and becomes responsible for his acts. The principle is conceded, but it is not applicable to the facts of this case.

3. A master is responsible for the torts of his servant, and if Bruener was negligent, then, as between plaintiff and defendant, that

one must suffer for his negligence who at the time stood in the relation to him of master. Quarman v. Burnett, 6 M. & W. (Eng.) 499; Joslin v. Grand Rapids Ice Co. 50 Mich. 516, 15 N. W. 887, 45 Am. Rep. 54. In doing any particular act Bruener could not be the servant of both plaintiff and defendant. But he might at the same time be the servant of plaintiff in the doing of some things and the servant of defendant in the doing of others. Morris v. Trudo, 83 Vt. 44, 74 Atl. 387, 25 L.R.A.(N.S.) 33. If, in negligently carrying out a proper direction of the defendant, he had himself made a pitfall for others, his negligence would doubtless have been chargeable to defendant, as in Cain v. Hugh Nawn Contracting Co. 202 Mass. 237, 88 N. E. 842, where a driver, hired with a team to haul dirt for defendant, left his load unguarded in the street, causing injury to a traveler. The precise question here is whether or not, in the specific detail of managing and handling the team, the driver became the servant of the defendant, to whom the team was hired.

4. One to whom the servant of another is temporarily hired has for the time being the responsibility of a master in so far, and only in so far, as he may exercise the authority of a master. In determining whether the wrongdoer is the servant of the person to whom he has been thus hired, the general test is whether the wrongdoer is under his control so that he can at any time determine the way in which the wrongdoer shall perform his work, not merely in reference to the result to be reached, but in reference to the method of reaching the result, and not merely in the general business which the act is intended to promote, but also in the particular act out of which the injury arose. Shepard v. Jacobs, 204 Mass. 110, 90 N. E. 392, 26 L.R.A.(N.S.) 442, 134 Am. St. 648; Meyers v. Tri-State Automobile Co. 121 Minn. 68, 140 N. W. 184, 44 L.R.A. (N.S.) 113.

5. Where the owner of a team hires out the team and a driver to another, the hirer having under the contract nothing to do with the driving of the team, the relation of master and servant still exists between the owner and the driver as regards the driving and care of the team. Morris v. Trudo, 83 Vt. 44, 74 Atl. 387, 25 L.R.A.

(N.S.) 33; Kimball v. Cushman, 103 Mass. 194, 4 Am. Rep. 528; Huff v. Ford, 126 Mass. 24, 30 Am. Rep. 645; Driscoll v. Towle, 181 Mass. 416, 63 N. E. 922; Cleveland v. Newsom, 45 Mich. 62, 7 N. W. 222; Ireland v. Clark, 109 Me. 239, 83 Atl. 667; see Nelson v. Saari, 123 Minn. 492, 144 N. W. 137. "There is a general consensus of authority that, although a driver may be ordered by those who have dealt with his master, to go to this place or that, to take this or that burden, to hurry or take his time, nevertheless in respect to the manner of his driving and the control of his horse he remains subject to no orders but those of the man who pays him." Holmes, J., in Driscoll v. Towle, 181 Mass. 416, 63 N. E. 922.

In this case the defendant indicated the work to be done, and in that sense controlled Bruener as he would have controlled the plaintiff had he been present. But Bruener was not subject unreservedly to the orders of the defendant. He drove in his own way, and the orders which he received simply pointed out to him the work which he or his master had undertaken to do. So far as reasonably necessary to care for and preserve the property, the driver, as plaintiff's representative, retained control of the team. He was in plaintiff's pay. He had been selected by plaintiff as a driver, and he was subject to the general orders of plaintiff. Had the plaintiff desired to discharge him, or recall him and substitute another driver in his place, or divert him to another job, he could have done so. Defendant could not have done any of these things. Had it been dissatisfied with the service, it could only have dismissed both man and team. On well-settled principles Bruener was the servant only of plaintiff.

Order reversed and new trial granted.