30097, 30121. EDWARDS *v.* FORD, and *vice versa.*

Decided June 26, 1943.

*Wright, Willingham & Fullbright,* for plaintiff.
*Lanham & Parker,* for defendant.

SUTTON, J. Mrs. T. E. Edwards brought suit against A. N. Ford, to recover for the homicide of her daughter by the alleged gross negligence of the defendant's stepdaughter in operating an automobile upon the public highway, the plaintiff's daughter being at the time a guest of the driver of the car who,· it was alleged, was a member of the defendant's family and using his car by his permission. It was alleged that she was less than sixteen years of age, of little experience in driving, and while operating the car at a dangerous and excessive speed of sixty to seventy miles an hour she took her eyes from the road and one of her hands from the steering-wheel, leaned over to pick up a puppy which had jumped or fallen from the front seat, and that the car ran from the road, across a ditch, and into a tree, causing the death of the plaintiff's daughter. It was alleged that the defendant's daughter was "grossly negligent in driving said automobile at an age under that which was permitted by the laws of the State of Georgia, and, being inexperienced in driving, by driving at a high and excessive rate of speed of from sixty to seventy miles per hour and

in taking her eyes from said roadway for the purpose of placing the dog upon the seat of said automobile while said automobile was being so operated, and that said acts *combined* constituted and were gross negligence upon the part of said child, for which the said Arthur N. Ford is liable" (Italics ours) and that he was "grossly negligent in permitting his said stepdaughter, who was under the age permitted by law to drive an automobile, to drive said automobile, and who had had practically no experience in the driving of an automobile to use and drive said automobile upon the public highways of this State, and that said acts upon the part of the said Arthur N. Ford were gross negligence upon his part." It was alleged that the plaintiff's daughter contributed to the support of the plaintiff who was dependent upon her for support. The defendant answered, denying the substantial allegations of the petition as to liability.

The evidence showed that the plaintiff's daughter was riding in the automobile of the defendant as a guest of his daughter who was driving the car upon a public highway, and that the car in some manner left the highway and ran into a ditch and then into a tree, and the plaintiff's daughter was killed. There was testimony for the plaintiff as to the speed of the car, estimated from the facts which they found after reaching the scene of the accident, but no witness estimated it as high as 60 to 70 miles an hour, though one witness estimated that, in his opinion, it must have been traveling at a minimum of 50 miles an hour. While there was direct evidence that a puppy was in the car with the two young ladies, the evidence is wholly lacking in probative value to sustain the allegations of the petition that at the time the car left the road, or at any time, the driver took her eyes from the road or leaned over to pick up a puppy from the floor of the car. The driver testified: "I was driving about 25 to 30 miles an hour. The last thing I remember we were humming and riding down the road. We were not talking or anything before the accident happened. Helen Edwards had a puppy in her lap. Nothing happened to the puppy while I was driving. I did not have my hands on the dog at all. I did not take my eyes off the road to look at the dog. . . I just don't remember anything happening after we passed a certain place on the road. . . I became unconscious, that is the reason I lost control of the car

and went into the ditch. . . At this point marked on the photograph I just went blank. I did not feel that coming on before it happened. It happened just like that" [snapping fingers]. Her mother testified that at the time she was "sick" in a menstrual way. While certain witnesses testified that the defendant made statements to them after the accident as to its cause, that it was caused by the driver leaning over to pick up the puppy which had jumped or fallen from the seat, a careful reading of such evidence shows that the defendant was not representing that his daughter had made such a report to him about picking up the puppy, but that what he stated was only a surmise or an inference which he drew after visiting the scene of the wreck. There was also documentary evidence as to statements made by the defendant in written reports to an insurance company in connection with his claim for damage to the automobile. The following appeared therein: "Carolyn states to us that she must have slipped over a little too far to the right and got in some gravel which pulled the car further to the right. They had a puppy in the car, and it might have been that the dog attracted their attention, momentarily causing her to pull over to the side of the road." It will be observed that in this report the defendant was not stating that his daughter had informed him that she leaned over to pick up a puppy or that her attention had been attracted to it. He reported that "they had a puppy in the car" and then draws a conclusion which is not of any probative value but a mere conjecture of his own: "It might have been," etc. Upon the conclusion of the evidence and the charge of the court the jury returned a verdict for the defendant. The plaintiff filed a motion for new trial upon the usual general grounds, and by amendment added several special grounds. The court overruled the motion, and the exception here is to that judgment. The verdict was authorized by the evidence, and in fact the plaintiff in error concedes in the brief of her counsel that a verdict might properly have been rendered for either party, and has abandoned the general grounds and insists only on the special grounds hereinafter dealt with, for a proper consideration of which the above statement of facts has been set forth.

1. After the jury had deliberated about two hours, they returned to the court-room and requested the court to define again

"gross negligence;" whereupon the court charged: "In general, slight diligence is that degree of care which every man of common sense, howsoever inattentive he may be, exercises under the same or similar circumstances. The absence of such care is termed gross negligence. If one should exercise that degree of care which every man of common sense, howsoever inattentive he may be, exercised under the same or similar circumstances, to prevent injury to another, or to another's property, he would not be guilty of negligence in failure to exercise slight diligence." It is contended, first, that the court erred in stating that under the circumstances recited the failure of one to use slight care would be negligence instead of stating that it would be gross negligence. We find no merit in this contention. The jury had requested a recharge on "gross negligence," and could not reasonably be said to have understood that the court was informing them on any negligence except gross negligence. It is contended, secondly, in the first special ground of the motion for new trial, that in using the expression "howsoever inattentive he may be" without some modification thereof, under the special facts of the case wherein the plaintiff's right to recover was predicated on alleged inattentiveness of the driver of the car, the court committed prejudicial error as is shown by the fact that the jury returned in a few minutes after being recharged, and that it practically amounted to the direction of a verdict against the plaintiff. This objection has been carefully considered but it can not reasonably be said that the charge unduly influenced the jury in making its verdict. The expression "howsoever inattentive he may be" does not relate to the *act* of the driver of the car as of the time of the accident in the present case, but characterizes the nature of habit of men who, though of common sense, are by habit or custom generally careless or inattentive in their conduct, and the law recognizes that nevertheless such men do exercise some degree of care, however slight, under certain facts and circumstances and prescribes as the test of gross negligence the failure to exercise that slight diligence or degree of care which "every man of common sense, howsoever inattentive he may be [generally] exercises under the same or similar circumstances." See *Harris* v. *Reid,* 30 *Ga. App.* 187, 188 (117 S. E. 256). In other words, as to the driving of an automobile upon a public highway, the slight care that every

man of common sense exercises, howsoever inattentive he may be generally, must be exercised by another under the same or similar circumstances attending the driving of the car. The use of the expression complained of was not error for the assigned reason that it was not modified to suit the special facts of the case. It was not reasonably calculated to prejudice or mislead the jury and, as ruled in *Seaboard & Roanoke Railroad Co.* v. *Cauthen,* 115 *Ga.* 422 (41 S. E. 653), the court, in undertaking to give a jury the definition of "gross negligence," should not omit the words complained of.

2. The second special ground of the motion for new trial complains that the court erred in refusing a request to charge as follows: "I charge you that it is the duty of any person operating an automobile upon the highways of this State to keep a lookout ahead, and I charge you that where such person is operating an automobile at a high rate of speed but *fails to look ahead and observe the course of the automobile, but gives his attention to other things within the car, and that while being thus steered* the automobile collides with a tree and as a result of the collision a person riding as a guest in the car is injured, the inference is authorized that the person driving the car under such conditions is guilty of gross negligence in failing to keep such a lookout ahead." (Italics ours.) Even if not otherwise objectionable, it would have been error to so charge, inasmuch as the italicized language is too broad to be said to be adjusted to the evidence, assuming but not conceding that the jury would have been authorized to find that the driver of the car momentarily took her eyes from the road and leaned over to pick up a puppy which had jumped or fallen from the front seat.

3. Special grounds 3 and 4 of the motion for new trial complain of the refusal of the court to give certain requested charges to the jury, but are without merit as not being adjusted to the evidence.

4. Ground 5 assigns error on the refusal of the court to give a requested charge that "the speed at which an . automobile is being operated may, like any other fact, be established by circumstantial evidence." The charge of the court as a whole was full and fair and was adjusted to the pleadings and the evidence, and

under the facts and circumstances of the case, no harmful error is shown by this ground of the motion.

5. The court charged the jury as follows: "As a jury, gentlemen, you take this case and apply these rules of law to the evidence which you have listened to, and as fair-minded, impartial jurors. with but one purpose in mind, and that to do right between the parties, let your verdict speak the truth." It is contended in the sixth special ground of the motion for new trial that the charge was error in that by the use of the words, "the evidence which you have listened to," the court excluded from the jury's consideration the documentary evidence which, it is contended, contained admissions by the defendant that the accident in question was caused by the inattentiveness of the driver of the car. This ground is without merit. The court, in its charge, fully explained to the jury that they should consider all the evidence in making up their verdict, saying particularly in a portion of the charge: "You look to the evidence in this case. You heard all the testimony of all the witnesses in this case who testified on the stand, and certain documentary evidence has been introduced in evidence, photographs, etc., and you will consider all of the evidence of every kind in determining what you believe to be the truth of the transaction, and in that way first determine how it occurred," etc. It could not reasonably be said that the jury conceived the idea that they should consider only the verbal testimony in the case. Moreover, it was ruled in *Darden* v. *Washington,* 35 *Ga. App.* 777 (6) (134 S. E. 813), that a charge to the jury that "You must discover [the] truth from the evidence which you have received from the stand" was not reversible error where it appeared, as in the present case, that the documentary evidence was identified by witnesses on the stand. See also *Hamilton* v. *State,* 18 *Ga. App.* 295, 299 (10) (89 S. E. 449); *Byrd* v. *Byrd,* 22 *Ga. App.* 354, 356 (3) (96 S. E. 10).

The plaintiff cites and relies on *Smith* v. *Hodges,* 44 *Ga. App.* 318 (161 S. E. 284), in which it was ruled that a jury would be authorized to find one guilty of gross negligence who, in driving an automobile along a street in Atlanta, in which was an elevated platform for use by those desiring to board street cars, failed to observe, without any explained reason, such a dangerous and clearly visible obstruction and ran into it and injured a guest in the car.

Even if in the present case the jury would have been authorized to find that the driver of the car momentarily took her eyes from the road and leaned over to pick up the puppy, we think the facts would bring the case within the exception ruled in *Harris v. Reid,* supra, and *Tucker* v. *Andrews,* 51 *Ga. App.* 841 (181 S. E. 673), where the principal of law was announced that one is not guilty of gross negligence where the alleged momentary inattentiveness to the road was induced by the promptings of a natural and humane instinct. In the Harris case the defendant's car struck the fender of another car, and when the guest uttered a cry of "look out" the driver momentarily glanced back and thus caused the car to run off an embankment, thereby inflicting injuries upon the plaintiff. In the Tucker case the plaintiff was riding as a guest with the defendant and two small children were on the back seat of the car. A bottle of milk was in the back of the car, and just as the car left a bridge one of the children informed the driver that the milk had turned over, whereupon she looked back to see about the milk, and while she was so engaged the car struck a telegraph pole, resulting in injury to the guest. Such acts as are alleged against the driver in the present case, even if supported by evidence as to her removing her eyes from the road and leaning down to pick up or rescue the puppy, are clearly analogous to the facts in the two cases above referred to, and would not, in our opinion, support a charge of gross negligence.

The defendant filed a cross-bill of exceptions; but it is unnecessary to pass on the assignment of errors therein, as the judgment on the main bill of exceptions is affirmed.

*Judgment affirmed on the main bill of exceptions; cross-bill dismissed. Stephens, P. J., and Felton, J., concur.*

FELTON, J. I concur in the judgment, for the reason that in my opinion the verdict was demanded by the evidence.