## 42655. FREEMAN v. MARTIN.

ARGUED MARCH 8, 1967—DECIDED JULY 26, 1967—

*Wallace, Wallace & Driebe, Charles J. Driebe, Albert B. Wallace,* for appellant.

*Alston, Miller & Gaines, Ronald L. Reid,* for appellee.

EBERHARDT, Judge. As was suggested by the trial judge in connection with his ruling on the motion for nonsuit, there are two constructions that might be placed on this evidence. We find ourselves in agreement with him that under either construction a recovery by the plaintiff is not authorized, and we affirm the grant of the nonsuit.

■ If we construe the evidence as establishing that Martin suddenly and unexpectedly lost consciousness for some unforeseen reason, such as a fainting spell, a heart attack, or the like, plaintiff could not recover because there is a failure to show any negligence on the part of the defendant.

By the great weight of authority, if not universally, the rule is that there is no liability for negligence or for gross negligence on the part of an operator of a motor vehicle who, while driving, is suddenly stricken by a fainting spell, or loses consciousness[1] from some unforeseen reason. Such loss of consciousness is a complete defense to an action based upon negligence, and if it appears from the plaintiff's evidence he fails to demonstrate a right to recover, making the nonsuit a proper disposition of the matter.

In *Edwards v. Ford*, 69 Ga. App. 578, 579 (26 SE2d 306) the driver testified: "I was driving about 25 to 30 miles an hour. The last thing I remember we were humming and riding down the road . . . I did not take my eyes off the road . . . I just don't remember anything happening after we passed a certain place on the road. . . I became unconscious, that is the reason I lost control of the car and went into the ditch. . . I just went blank . . ." A verdict for the defendant was approved, Judge Felton observing that in his opinion it was demanded by the evidence.

In *Annis v. Georgia Power Co.*, 42 Ga. App. 754 (157 SE 242) where it appeared that the driver "suddenly and all at once . . . lapsed into unconsciousness" it was held that the sudden illness and unconsciousness was an independent intervening cause of the collision with a streetcar that almost immediately followed.

Where one "suffered an attack of vertigo or fainting spell and collapsed" while crossing a railroad track, though a trespasser, his injury was "brought about by peculiar facts and circumstances which relieve him from the guilt of a lack of ordinary

---

[1]An exception is exemplified in *Jackson v. Co-Op. Cab Co.*, 102 Ga. App. 688 (117 SE2d 627), and in *Co-Op. Cab Co. v. Arnold*, 106 Ga. App. 160 (126 SE2d 689). And compare *Sauers v. Sack*, 34 Ga. App. 748 (131 SE 98); *Central of Ga. R. Co. v. Hall*, 124 Ga. 322, 332 (52 SE 679, 4 LRA (NS) 898, 10 ASR 170, 4 AC 128).

care in thus exposing himself." He was not negligent. *Southern R. Co. v. Kelley,* 52 Ga. App. 137, 138 (182 SE 631).

Cases presenting facts strikingly similar to that made by plaintiff's testimony here are Armstrong v. Cook, 250 Mich. 180 (229 NW 433) where the driver lost consciousness or fainted as she started to cross an intersection and a judgment against her for damages was reversed because no negligence on her part was shown; Soule v. Grimshaw, 266 Mich. 117 (253 NW 237), holding a driver not liable when he lost consciousness and crossed to the wrong side of the road; Harrington v. H. D. Lee Mercantile Co., 97 Mont. 40 (33 P2d 553), and Weldon Tool Co. v. Kelley, 81 Ohio App. 427 (76 NE2d 629), where the driver suffered a heart attack and lost consciousness therefrom, and a similar result is found in Cohen v. Petty, 65 F2d 820. In Wishone v. Yellow Cab Co., 20 Tenn. App. 229 (97 SW2d 452) the driver suffered a sudden epileptic seizure and lost control of the cab. For other cases in which the principle is found, see Waters v. Pacific Coast Dairy, 55 Cal. App. 2d 789 (131 P2d 588); Ford v. Carew & English, 89 Cal. App. 2d 199 (200 P2d 828); Bushnell v. Bushnell, 103 Conn. 583 (131 A 432, 44 ALR 785, 25 NCCA 719); Livaudais v. Black, 13 La. App. 345 (127 S 129); Meyers v. Tri-State Auto Co., 121 Minn. 68 (140 NW 184, 44 LRA (NS) 113); Holmes v. McNeil, 356 Mo. 846 (204 SW2d 303); Abbott v. Hayes, 92 N. H. 126 (26 A2d 842); LaGasse v. Laporte, 95 N. H. 92 (58 A2d 312); Journey v. Zawish, 11 N. J. Misc. 482 (167 A 7); Rasbach v. Cassidy, 263 App. Div. 1047 (33 NYS2d 762); La Vigne v. La Vigne, 176 Ore. 634 (158 P2d 557); Lobert v. Pack, 337 Pa. 103 (9 A2d 365, 7 NCCA (NS) 312); Espeland v. Green, 74 S. D. 484 (54 NW2d 465); Driver v. Brooks, 176 Va. 317 (10 SE2d 887); Dishman v. Whitney, 121 Wash. 157 (209 P 12, 29 ALR 460).

The basis for this rule is that the acts of the driver under these circumstances are not his voluntary acts, and are thus not the kind of acts for which he can be held.

■ If we construe the evidence as showing that Martin had consumed enough whiskey to cause him to "pass out" by slumping over the steering wheel while driving the car, rather than it having been caused by a sudden, unexpected illness, and that

this was what caused him to lose control of the vehicle, we have a plain case of gross negligence on his part. But under the circumstances here we conclude that Freeman assumed the risk of whatever negligence and its consequences that might flow from Martin's drinking.

We dealt with a similar but not an identical problem in *Sparks v. Porcher,* 109 Ga. App. 334 (136 SE2d 153), but in any event the opinion in that case was by only four judges, with one specially concurring in the judgment, and with four others dissenting. It is not, therefore, binding authority and is the law of that case only.

Here Freeman owned the automobile, having a right to control it,[2] and he alleges that his status was that of a passenger. He knew of Martin's drinking throughout the evening, for they had been doing it together. It is inescapable that if Martin "passed out" at the wheel within a few blocks after getting under it his condition was such as to put any who might ride with him on notice of it. With this knowledge Freeman assumed the risk when he voluntarily entered the car with Martin at the wheel.

Freeman had negligently entrusted his automobile to an incompetent driver with knowledge of the incompetence, and thus became liable himself for any injury which Martin might negligently inflict upon a third party in the operation of it. *NuGrape Bottling Co. v. Knott,* 47 Ga. App. 539 (171 SE 151); *Crisp v. Wright,* 56 Ga. App. 338 (192 SE 390). He is in no position to recover from Martin. Since they had been drinking

---

[2] In *Powell v. Berry,* 145 Ga. 696, 698, 701 (89 SE 753, LRA 1917A 306), relied on as a basis for the dissent, it was pointed out that in that case "plaintiff's son had nothing to do with the operation of the car, and no control over or direction of the defendant, but was riding as a guest of the latter" in the defendant's car, and it is asserted in the opinion that "in some cases, the undisputed facts may be so clear as to leave no room for a jury to find save one way, and the question may become one of law and be dealt with on demurrer or motion for a nonsuit."

together during the evening they were, in any event, in pari delicto—equally at fault.

No fact is better known or publicized than that alcohol slows the reflexes, dulls the thinking processes, slows the impulse stimuli and reaction thereto, and is rated by doctors, law enforcement officials, and safety engineers and planners as being one of the chief causes of highway accidents in this country. Volumes have been published about it. It has filled thousands of columns of our newspapers, appearing with great frequency in connection with the reports of accidents. Highway safety programs have highlighted it on television, radio and in many other ways. It is scarcely possible that any person having the capacity to read or to hear has failed to have it brought to his attention.

It is the law too, that "while the negligence of the host is not imputable to the guest, the guest can not close his eyes to known or obvious dangers arising either from the' acts of the driver or from the acts of others. . ." (*Russell v. Bayne,* 45 Ga. App. 55, 56 (163 SE 290); *Eddleman v. Askew,* 50 Ga. App. 540 (179 SE 247); *Lazar v. Black & White Cab Co.,* 50 Ga. App. 567 (3) (179 SE 250); *Randall Bros. v. Duckett,* 53 Ga. App. 250, 254 (1) (185 SE 394)), and the "guest in an automobile can not at all times treat himself as 'dead freight,' but, when negligence on the part of the driver arises, must act as an ordinarily prudent person would act, under the same or similar circumstances." *Crandall v. Sammons,* 62 Ga. App. 1, 4 (7 SE2d 575). Certainly prudence would have required this plaintiff, a passenger rather than a guest, to desist from riding with one obviously influenced by intoxicants. Though Martin placed himself under the wheel when they stopped at the girl's house, and insisted on driving, plaintiff knew of his drinking and should have denied him that privilege.

If he would not deny Martin the privilege of driving, plaintiff should have remained out of the car. "If an ordinarily prudent person would not have entered an automobile driven by a person known to be intoxicated or *whose intoxicated condition is palpably apparent,* it would be negligence for one to enter or to re-enter the automobile, after having retired therefrom at a tem-

porary stop on a continuous trip, and ride therein, and if the injury resulted from the failure of the driver to operate the car with proper care and skill because of his intoxicated condition, then the person riding therein could not recover under those conditions." *Mann v. Harmon,* 62 Ga. App. 231 (2) (8 SE2d 549). (Emphasis supplied).

In *Redding v. Morris,* 105 Ga. App. 152, 156 (123 SE2d 714), a decision by Judge, now Justice Frankum, it appeared that "The plaintiff got under the steering wheel of the defendant's automobile and drove it about one-half mile, and then the plaintiff turned the automobile over to the defendant. At this point the plaintiff failed to exercise ordinary care for his own safety when he continued to ride as a passenger in an automobile driven by an intoxicated person, and if a wreck had occurred as a result of such intoxication while the defendant was driving and the plaintiff had been injured as a result thereof, he could not have recovered damages from the defendant." Cf. *Smeltzer v. Atlanta Coach Co.,* 49 Ga. App. 755 (176 SE 846); *Williams v. Owens,* 85 Ga. App. 549 (69 SE2d 787); and *Stephenson v. Whiten,* 91 Ga. App. 110 (85 SE2d 165).

We have applied the assumption of risk rule to scores of less pernicious situations. For example, when one rides in a car with another who is obviously sleepy and makes no effort to keep him awake or to abandon the car (*Oast v. Mopper,* 58 Ga. App. 506 (199 SE 249)), or when one gets out of a car that has stopped on a busy highway at night and tries to push it, at the driver's request (*Beasley v. Elder,* 88 Ga. App. 419 (76 SE2d 849)), or when he continues to drive the vehicle of another after discovering that the brakes do not function (*Redding v. Morris,* 105 Ga. App. 152 (123 SE2d 714)), or when he enters a car about to engage in drag racing (*Roberts v. King,* 102 Ga. App. 518 (116 SE2d 885)), or when he enters the unprotected area at a race. *Tatum v. Clemones,* 105 Ga. App. 221 (124 SE2d 425).

One who volunteers to ride a horse in a mounted patrol assumes the risk involved (*LaHoste v. Yaarab Mounted Patrol,* 89 Ga. App. 397 (79 SE2d 570), and he assumes the risk of known qualities of a vicious bull. *Graham v. Walsh,* 14 Ga.

App. 287 (80 SE 693). Spectators at a baseball game assume the risk of being hit by foul balls (*Hunt v. Thomasville Baseball Co.,* 80 Ga. App. 572 (56 SE2d 828)), and one who goes for a thrill ride on a roller coaster assumes the risk of its speed and convolutions. *Atlanta Funtown, Inc. v. Crouch,* 114 Ga. App. 702 (152 SE2d 583). Patrons of a movie house assume the risk of popcorn boxes thrown on the floor by others. *Rogers v. Atlanta Enterprises,* 89 Ga. App. 903 (81 SE2d 721). The timekeeper at a wrestling match assumes the risk of participants being thrown from or jumping from the ring onto him (*Davis v. Jones,* 100 Ga. App. 546 (112 SE2d 3)); one who sticks his hand in a waste chute on an ice machine to get a handful of the ice assumes the risk of getting his fingers cut off (*Sanford v. Frigidice Co.,* 68 Ga. App. 593 (23 SE2d 544)); or who stands in the rear of a truck moving across a field assumes the risk of falling out of it (*DeWinne v. Waldrep,* 101 Ga. App. 570 (114 SE2d 455)); and a laborer assumes the risks naturally incident to and in the course of his employment (*Noble v. Jones,* 103 Ga. 584 (30 SE 535)), even of hazardous employment. *Johnson v. Alabama & Ga. Iron Co.,* 8 Ga. App. 787 (70 SE 156).

A corollary proposition, well established in the decisions of both appellate courts, is that one who can read must read, and if he signs a contract without doing so (no trick or artifice being involved and in no emergency) he is bound by its terms (*Truitt-Silvey Hat Co. v. Callaway & Truitt,* 130 Ga. 637 (2) (61 SE 481); *Lewis v. Foy,* 189 Ga. 596, 598 (6 SE2d 788); *Budget Charge Accounts v. Peters,* 213 Ga. 17, 18 (3) (96 SE2d 887)), and this extends even to one who is illiterate. *Miller v. Walker,* 23 Ga. App. 273 (97 SE 869).

Likewise, it is the law that where prudence would require one to look or listen he must do so, "or take the consequences so far as the consequences may have been avoided by that means." *Collum v. Ga. R. &c. Co.,* 140 Ga. 573 (3) (79 SE 475). Harken the words of the Good Master: "Having eyes, see ye not? and having ears, hear ye not?" St. Mark, 8:18.

That there is a risk when the driver of a vehicle is "under the influence" is freely asserted in our affirming of convictions for that offense, when it is then less safe for him to drive than

it would be if he were not so. *Harper v. State*, 91 Ga. App. 456 (86 SE2d 7). This court should approach this matter with a consistency. We cannot afford to play fast and loose in applying the assumption of risk doctrine; it is not judicial to "run with the hare and bark with the hounds."

So, whether plaintiff's testimony be construed as saying that Martin became suddenly and unexpectedly ill, losing consciousness, or whether it be construed as saying that from excessive drinking of whiskey he simply "passed out," it wholly fails to make out a case for any recovery. "[I]f, admitting all the facts proved and all reasonable deductions from them, the plaintiff ought not to recover, a nonsuit shall be granted." *Code* § 110-310. And see *Steele v. Central of Ga. R. Co.*, 123 Ga. 237 (1, 2) (51 SE 438).

*Judgment affirmed. Felton, C. J., Bell, P. J., Jordan, P. J., and Whitman, J., concur. Deen, J., concurs specially. Hall, Pannell and Quillian, JJ., dissent as to Division 2.*

DEEN, Judge, concurring specially. I would feel bound by *Powell v. Berry*, 145 Ga. 696 (89 SE 753, LRA 1917A 306) and leave the issue for a jury to determine, except for the reason in the case sub judice the plaintiff affirmatively placed the control and operation of his vehicle in the hands of the defendant who had had several drinks.

PANNELL, Judge, dissenting. I dissent from the ruling of the majority upon the authority of *Sparks v. Porcher*, 109 Ga. App. 334 (136 SE2d 153), cert. den. 109 Ga. App. 885, in which five judges agreed that "[u]nder the facts of this case a jury question was presented as to whether or not the plaintiff knew that the defendant was intoxicated from consuming alcoholic beverages to the extent that it was less safe for him to operate the motor vehicle than if he had not consumed such alcoholic beverages" (see special concurrence of Presiding Judge Nichols, page 343), which is in direct conflict with the ruling of the majority here which determines this question as a matter of law rather than a matter of fact for the jury. However, even if *Sparks v. Porcher* was not a five judge case on the principle of law involved here and regardless of the various conflicting decisions of the Court of Appeals discussed in the *Porcher* case,

we are bound by the older decisions of this court cited in the *Porcher* case and by the decisions of the Supreme Court, particularly, *Powell v. Berry*, 145 Ga. 696, 700, supra, in which that court held: "If a driver, from intoxication, is in a condition which renders him incapable of operating it [an automobile] with proper diligence and skill, and this is known or palpably apparent to one entering the car, this is a fact which may be proved for the consideration of the jury, along with other facts, to throw light on the question of whether such person exercised ordinary care in entering the car or in remaining in the car, or in reference to his conduct while in it." The plaintiff testified in part: "Q. So he either had two or three drinks during the entire evening? A. That I know of. Q. Do you have any reason to believe he had more than that? A. No, sir."

In my opinion in this case a jury question is presented and the trial court erred in granting a nonsuit.

I am authorized to state that Judges Hall and Quillian concur in this dissent.