**E. N. NASON, INC.**

v.

**LAND–HO DEVELOPMENT CORPORATION.**

Supreme Judicial Court of Maine.

July 3, 1979.

Douglas G. Carlston (orally), Carlston & Hodson, Newport, for plaintiff.

Goodman, Goodman & Kornreich by Louis H. Kornreich, Bangor (orally), for defendant.

Before McKUSICK, C. J., and POMEROY, WERNICK, ARCHIBALD, GODFREY and NICHOLS, JJ.

NICHOLS, Justice.

The Defendant, Land-Ho Development Corporation, appeals from a judgment entered in Superior Court in Penobscot County in favor of the Plaintiff, E. N. Nason, Inc., in an action tried there jury-waived. The Defendant challenges several evidentiary rulings made by that Court. The Defendant also asserts that the complaint failed to state a cause of action and that the Plaintiff's failure to grant requested discovery required the imposition of sanctions and the grant of a continuance.

We deny the appeal.

During the summer of 1974 negotiations were commenced between agents of the Plaintiff and the Defendant concerning the construction by the Plaintiff of between 8,000 and 9,000 feet of roadway at the Defendant's development on the shore of Lake Sebasticook in Newport, Maine. There was considerable discussion of the specifications for construction of the new roadway. In addition, terms of payment and overall cost estimates were negotiated. The presiding justice concluded that in October, 1974, the parties reached an agreement:

> whereby the Plaintiff was to construct a base road for the Defendant on property of the Defendant in Newport, Maine, with billings to be submitted by the Plaintiff as various phases of the work was [sic] completed, with payment due thereon upon receipt by the Defendant of said billings. The court further finds by a fair preponderance of the evidence that it was the intention of the parties that work would cease until payment of a prior phase of work had been tendered by the Defendant.

At trial the parties differed as to the amount of payment owed by the Defendant. The Plaintiff contended that charges were to be based on hourly rates for use of its equipment in the project. The Defendant contended that the overall estimate of roughly one dollar a foot had been agreed upon as the total compensation to be paid. The presiding justice apparently found the Plaintiff's version more persuasive as he concluded that the Defendant was liable for the amounts billed in accordance with the Plaintiff's terms.

Construction commenced in November, 1974. Several bills were submitted by the Plaintiff to the Defendant and were paid by it in due course. However, the last two bills submitted were not paid and these remained unpaid at the time of trial. This action was commenced for recovery of the sums allegedly due the Plaintiff on those bills.

During the course of pre-trial discovery it became clear that the Plaintiff's records and its employee's recollections relating to this project were inadequate to reconstruct the history of this construction project in full detail. The Plaintiff did, however, pos-

sess certain records relating to hours of equipment use on the job. Both during the course of discovery and at trial the Defendant objected to the absence of more complete data on equipment use at the site.

### I

 On March 30, 1977, a hearing was held in response to the Defendant's first motion to dismiss the complaint for failure to state a cause of action. At that hearing the Defendant essentially challenged the adequacy of the complaint's statement of the account alleged to be past due. The Plaintiff agreed to amend the complaint by adding specifics as to the past bills which had been paid and the amount outstanding.

A subsequent motion to dismiss upon the same grounds, made at trial, was denied. There was no error in that denial.

In order to state a claim upon which relief can be granted, a complaint must aver either the necessary elements of a cause of action or facts which would entitle a plaintiff to relief upon some theory. *Dom J. Moreau & Son v. Federal Pac. Elec. Co.*, Me., 378 A.2d 151, 153 (1977). The function of the complaint is to provide fair notice of the claim and a generalized statement of the facts may fulfill this function. *Rush v. Casco Bank & Trust Co.*, Me., 348 A.2d 237, 241 (1975).

The Plaintiff's complaint satisfied the requirements of M.R.Civ.P. 8(a) by declaring (1) that a contract for construction of certain roads had been entered upon by the parties, (2) that the Plaintiff had demanded payment, in accordance with that contract and as evidenced by attached exhibits, and (3) payment had not been forthcoming. *Cf.* M.R.Civ.P. Appendix of Forms, Forms 4, 5 and 12. By a single reference to the complaint as stating an account annexed, the Plaintiff was not estopped to assert the sufficiency of the complaint on another theory. *Cf. Forbes v. Wells Beach Casino, Inc.*, Me., 307 A.2d 210, 215 (1973).

### II

 The Defendant next contends that the case should have been continued for further discovery because of surprise due to the Plaintiff's assertion of a new theory of law to support the claim; that new theory was that this was a single contract claim rather than a claim on an account annexed.

The Plaintiff replies that there was no surprise to the Defendant either in the evidence presented or in the legal theory of the case.

Under the circumstances set forth we find no abuse of discretion by the Superior Court in refusing to grant a continuance. *See Blue Rock Indus. v. Raymond Int'l, Inc.*, Me., 325 A.2d 66, 79 (1975). It does not appear that the Defendant was thereby deprived of any evidence or that other evidence would have become available to the Defendant in the event a continuance had been granted. Nor does any possibility of a surprise in the Plaintiff's reliance on a new, but closely related, legal theory constitute adequate grounds for reversal of the Superior Court's denial of a continuance under the standard stated above. *See State v. Simmonds*, Me., 313 A.2d 120, 122 (1973); *cf. Charlesworth v. American Express Co.*, 117 Me. 219, 222, 103 A. 358 (1918) (if a change in a pleading is a matter of substance and surprises opposing party, continuance should be granted).

### III

 On a related motion the Defendant asked that sanctions be imposed upon the Plaintiff for failure to respond fully to its motion for discovery.

There is no dispute that the Plaintiff failed to provide detailed information of the specific days and hours during which each item of equipment was used. Because this information was not provided the Defendant claims he was denied vital means for cross-examination of the Plaintiff's president so as to rebut the total hours listed on the Plaintiff's business records.

At an earlier motion to compel discovery the Plaintiff explained that it had provided the Defendant with all the written records available to it and that Elton Nason, the Plaintiff's president, was unable to recall from memory more specific data than that provided in these records. This was not a case where evidence suddenly materialized

at trial, nor is there any indication whatsoever that more complete data was somewhere or somehow available to the Plaintiff.

The Plaintiff's inability to supply the requested information could not have properly been characterized as unjustifiable resistance to granting discovery or as an unreasonable failure to serve answers to interrogatories. *See* Advisory Committee's Notes to M.R.Civ.P. 37; 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2281 (1970).

Therefore, there was no error in the Superior Court's denial of the Defendant's motion for the imposition of sanctions.

## IV

Crucial evidence in the Plaintiff's case-in-chief were seven exhibits evidencing the hours of equipment use and the amounts due in "rental." These exhibits included four bills prepared by the Plaintiff's secretary from two summaries of daily work sheets prepared by the Plaintiff's president and one daily work sheet prepared by a foreman for a period when the president was absent from the work site.

The Defendant objected to their admission as hearsay not subject to any exception. The Plaintiff contends they were properly admitted as business records in accordance with M.R.Evid. 803(6).[1]

To satisfy the requirements of this rule a business record in the form of memoranda reports or data compilations must be made "at or near the time" of the events reflected in the records and be kept "in the course of a regular[ly] conducted business." *Torrey v. Full Gospel Church of Searsport,* Me., 394 A.2d 276, 280 (1978). It must be the regular practice of the business to keep records of the type offered into evidence. These essentials must all be established by the testimony of the custodian or of another qualified witness. Finally, it is essential that no lack of trustworthiness appear in the source of information or the method or circumstances of preparation. *Id.* at 281.

Taking each exhibit in turn, we will examine the foundation laid by Elton Nason, the Plaintiff's president, whom the record discloses was "a qualified witness" to show the circumstances surrounding the creation of these records. He was intimately involved in the daily operation of this business, well situated to testify on these matters.[2]

Two of the exhibits were prepared by the Plaintiff's president himself. These were summaries of daily work sheets which recorded the hours of equipment use on each day of work at the site. It appears that the daily work sheets were made at the close of each day by Elton Nason when he acted as supervisor and equipment operator at the site. At the end of each billing period he personally transcribed these notes, summarizing them in order to assist the Plaintiff's secretary in making the bills which were sent to the Defendant. He testified that this process of daily note-taking followed by summarization was the normal practice he had followed on many past jobs, over the previous twenty-five years, on which the contract price was determined on an equipment rental basis.

---

1. M.R.Evid. 803 provides in pertinent part:
 The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

 ·　　·　　·　　·　　·

 (6) Records of regularly conducted business. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regular conducted business, and if it was the regular practice of that business to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

2. That this witness did not in all cases prepare the records or supervise their preparation does not destroy his ability to provide the foundation for their admission as a "qualified witness." *See United States v. Flom,* 558 F.2d 1179, 1182 (5th Cir. 1977); *United States v. Pfeiffer,* 539 F.2d 668, 670–71 (8th Cir. 1976).

This evidence satisfied the requirements of the business record exception. These summaries were prepared from information transmitted by a person with knowledge, that is, from information supplied by the president's daily notes. It was the regular practice of this business to prepare such summaries and the business was regularly conducted. We conclude that these records were prepared reasonably contemporaneously to the time of the acts or events themselves. *See Missouri Pac. R.R. Co. v. Austin,* 292 F.2d 415, 422–23 (5th Cir. 1961). These exhibits were properly admitted.

A third exhibit was a daily work sheet prepared by a foreman at the site during a period of the president's personal absence from the site. The latter testified that in his absence the foreman at the site routinely kept daily records of equipment usage. These were made on the same day as the equipment was used and were relied on by the Plaintiff in billing its customer. This exhibit also was properly admitted.

Finally, the four bills originally sent by the Plaintiff to the Defendant were admitted as exhibits. The Plaintiff urges that these bills were properly admitted for the non-hearsay purpose of showing that notice and demand had been made upon the Defendant.

While we agree, we go further and conclude that these exhibits were properly admitted as business records to evidence the amount due from the Defendant. They were prepared on the basis of the exhibits described above; that is, from information transmitted by persons with knowledge. It was the regular practice of this business to prepare such bills and the business was regularly conducted in accordance with these procedures, as shown by the testimony of the Plaintiff's president.

These exhibits were prepared at the end of each billing period, a time reasonably contemporaneous to the occurrence of the acts or events reported. They were properly admitted into evidence. *See Torrey v. Full Gospel Church of Searsport, supra,* at 281; *Morgan v. Paine,* Me., 312 A.2d 178, 184 (1973).

The factors to be weighed in evaluating the trustworthiness of business records such as these include the existence of a motive and opportunity to prepare an inaccurate record, long delay prior to their preparation, the nature of the information recorded, the systematic checking, regularity and continuity in maintaining the records and the business' reliance on them. *See* Advisory Committee's Note to Federal Rule of Evidence 803(6) at 11 J. Moore & H. Bendix, *Moore's Federal Practice* § 803(6)[8] 2d ed. (1976); *Kuhlman, Inc. v. G. Heileman Brewing Co., Inc.,* 83 Wis.2d 749, 266 N.W.2d 382, 389 (1978); *Missouri Pac. R.R. Co. v. Austin, supra.*

The discretionary power of the Superior Court to admit or exclude evidence upon evaluation of these factors was, we conclude, properly exercised in this case.

### V

At the close of the Defendant's case, the Defendant sought to introduce the testimony of an "expert" witness to describe certain defects the Defendant alleged in the roadway completed, to dispute the reasonableness of the total amount charged for construction of the completed roadway, and to suggest a reasonable completion date for the project. The Superior Court excluded this evidence, sustaining the Plaintiff's objections on the grounds of relevancy and on the grounds this witness was not competent to state opinions on these particular questions.

Significantly the Defendant made no offer of proof in the Superior Court, although on appeal he now challenges the exclusion of this witness' testimony. While the record discloses the purposes of the Defendant, we are uninformed as to the substance of the evidence which the proponent would offer first to qualify this witness to render expert opinions, and second as to the substance of his opinion.

A litigant overlooks at his peril M.R.Evid. 103(a)(2) which provides in pertinent part:

> Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

. . . . .

**1180**

(2) In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which the question was asked.

See State v. Rich, Me., 395 A.2d 1123, 1130 (1978).

Among the numerous issues raised by the pleading was the question whether that portion of the roadway which had been constructed had been completed in accordance with the contract. This issue was effectively removed from the controversy when while on the witness stand David McGarr, of the Defendant corporation, who had negotiated this contract with the Plaintiff, conceded that "What was done was done in accordance to what we had agreed upon, there was going to be a rough base road."

That admission during trial disposed of this issue as completely as if the same admission had been made by pleadings filed in advance of trial. One question which the Defendant intended to ask its final and "expert" witness was whether the roadway was "constructed properly and according to reasonable standards in the trade." This question related to no issue remaining in the case and could be properly excluded by the Superior Court. M.R.Evid. 402.

We move on to the other questions which the Defendant intended to ask this witness.

As a preliminary question pursuant to M.R.Evid. 702 the trial court must determine whether a witness is qualified to testify in the areas addressed; the trial court's determination thereof will be reversed on appeal only as an abuse of discretion. State v. Gervais, Me., 394 A.2d 1183, 1187 (1978); State v. Viger, Me., 392 A.2d 1080, 1083 (1978); cf. State v. Fernald, Me., 397 A.2d 194, 197 (1979). Similarly, the relevancy of proposed evidence is a question within the discretion of the trial court. State v. Viger, supra.

As to the expected completion date for a project such as this and the reasonable cost of completing the project, the Defendant failed to show that his expert was qualified to give an opinion on road construction in central Maine.

The witness had been a superintendent of public works in Boxford, Massachusetts for five years; he had previously operated a construction business; and he had been a heavy-equipment operator in Boston. The record fails to disclose any knowledge by the Massachusetts man of conditions and trade practices in central Maine. Cf. Ireland v. Clark, 109 Me. 239, 247, 83 A. 667 (1912).

Similarly the record does not reveal any sufficient basis upon which the Massachusetts man might have given admissible testimony concerning the other proposed issues. While he stated he had viewed the site and the pit from which road-building materials were extracted he never indicated a thorough knowledge of the conditions at the site such as would have been necessary to give a valid cost estimate and to state the time reasonably necessary for completion of the project. In particular, no mention was made of his knowledge of the weather or soil conditions which affected this project.

An expert's opinion must be based on a sufficient factual basis to which his specialized knowledge may be applied. See Parker v. Hohman, Me., 250 A.2d 698, 702 (1969). M.R.Evid. 705(b) permits a voir dire examination of a proposed expert witness directed to the underlying facts or data on which his opinion is based. Where a sufficient basis for the opinion is shown to be lacking, the opinion is inadmissible. See R. Field & P. Murray, Maine Evidence § 705.2 (1976).

We conclude that the Defendant has demonstrated no abuse of discretion by the Superior Court in excluding the Massachusetts man's opinions as to road building in central Maine.

The entry is:

Appeal denied.

Judgment affirmed.

DELAHANTY, J., did not sit.