STATE of Maine

v.

Robert J. McNALLY.

Supreme Judicial Court of Maine.

Argued March 1, 1982.

Decided March 26, 1982.

James E. Tierney, Atty. Gen., Fernand LaRochelle (orally), Michael G. Messerschmidt, Wayne S. Moss, Asst. Attys. Gen., Augusta, for plaintiff.

Dunlap & O'Brien, Mark E. Dunlap (orally), Portland, for defendant.

Before McKUSICK, C. J., and GODFREY, NICHOLS, ROBERTS, CARTER and WATHEN, JJ.

McKUSICK, Chief Justice.

Following a seven-day jury trial, the Superior Court (Cumberland County) convicted defendant McNally of one count each of theft by misapplication of property, 17-A M.R.S.A. § 358 (Supp.1981), and of tampering with public records or information, 17-A M.R.S.A. § 456(1)(B) (Supp.1981).[1] Finding no reversible error in any of defendant's eight points on appeal, we affirm his conviction.

Defendant held the position of code enforcement officer of the Town of Gray from 1974 until he resigned in August of 1979. In the course of his duties he received fees for building, electrical, and plumbing permits. Upon receiving payment of a permit fee, defendant gave back to each applicant a yellow copy of his permit application; defendant would keep the white original of the application and would turn over the money collected to a clerk in the town office, who would record the receipt on a daily cash tape made by the Town's single cash register. McNally was indicted and convicted of collecting fees from a number of permit applicants and failing to turn the entire amount of those fees in to the Town's treasury. He was also indicted and convicted of altering the original of a plumbing permit kept by the Town of Gray as the record of that transaction.

At trial, real estate broker Judith Blackinton testified for the State that in May, 1979, she had given defendant a $30 check for a dye test to be conducted for a client. When the dye test became unnecessary, she requested a refund. After defendant failed to return her money following repeated requests, Blackinton in July appealed to Janice McGrath, who was then the Acting Town Manager. McGrath found that defendant had delivered Blackinton's check to the town office, but had represented it as payment for a sewer permit for one Scott Jones, rather than for a dye test for Blackinton's client. Under McGrath's question-

---

ing, defendant explained that the two transactions were related. To substantiate his story, he went to his office and returned with the white original of a plumbing application that had been numbered and dated by hand and that bore the purported signature of Scott Jones. The application was for a dye test, and had been voided. McGrath talked to Jones, who said he had paid $28 cash for a plumbing permit, but that he knew nothing about a dye test or about Blackinton's client. Jones produced a yellow copy of his permit application, the number and date of which matched those of the white original defendant had shown McGrath. Unlike the supposed white original, however, Jones' copy did not bear his signature, was for a septic tank system rather than for a dye test, and listed the fee at $28. Both permit applications were admitted in evidence. Jones testified that what purported to be his signature on the supposed original was a forgery. McGrath testified that she could find no record of the Town's having received $30 for a dye test for Blackinton's client.

Acting Town Manager McGrath reviewed all of defendant's transactions between January 1, 1979, and August 13, 1979, when he resigned as code enforcement officer. She compared the fees recorded on permit applications kept in defendant's office with the fees actually turned into the town office by defendant as reflected by cash tapes from the Town's cash register. The comparison revealed many other instances of permit fees indicated by the original permit applications to have been paid that did not have corresponding entries on the cash tapes maintained for moneys turned into the Gray town office. A sizable number of other permit applicants testified at trial that they had paid McNally fees in connection with such applications.

In charging the jury, the presiding justice offered an explanation of the crime of theft by misapplication that contained the following language:

> And you may infer that he dealt with the property as his own, if he fails to pay, if an audit reveals a shortage or falsification on his accounts. You may infer that he knows of any obligation, he knows he has to pay. And you may infer that he dealt with the property as his own, if he fails to pay or if an audit reveals a shortage or falsification of his accounts. You may infer that—you don't have to infer. You are not required to infer that but you may infer from his status as an employee.

That instruction was based on 17–A M.R.S.A. § 358(3)(B), under which a government employee charged with theft by misapplication of property is presumed "[t]o have dealt with the property as his own if he fails to pay or account upon lawful demand, or if an audit reveals a shortage or falsification of his accounts." The presumption is significant because dealing with another's property as one's own is an element of the crime of theft by misapplication.[2] *Id.*, § 358(1).

█ At the outset we note that the presiding justice complied with M.R.Evid. 303(c) by explaining the presumption to the jury without labelling it a "presumption," by avoiding any express reference to the statute, and by making it clear that the presumption was merely permissive. Defendant did not object to the use of the full language of section 358(3)(B), even though

---

2. 17–A M.R.S.A. § 358(1) and (3) read as follows:

1. A person is guilty of theft if he obtains property from anyone or personal services from an employee upon agreement, or subject to a known legal obligation, to make a specified payment or other disposition to a 3rd person or to a fund administered by himself, whether from that property or its proceeds or from his own property to be reserved in an equivalent or agreed amount, if he intentionally or recklessly fails to make the required payment or disposition and deals with the property obtained or withheld as his own.

3. An officer or employee of the government or of a financial institution is presumed:

A. To know of any legal obligation relevant to his liability under this section; and

B. To have dealt with the property as his own if he fails to pay or account upon lawful demand, or if an audit reveals a shortage or falsification of his accounts.

the State does not contend that defendant "fail[ed] to pay or account upon lawful demand," but rather relies upon the fact that "an audit reveals a shortage or falsification of his accounts." There was no evidence of a "lawful demand." Nonetheless, far from objecting to that surplus language, defendant expressly requested it after the presiding justice first charged the jury without it. Defendant also did not object to the instruction on the ground that it called undue attention to an inference the jurors were likely to draw on their own, and not until oral argument did he complain that McGrath's comparison of the permit applications with the cash tapes did not constitute an "audit" within the meaning of the statute. Since on appeal defendant has not shown the instruction to have constituted obvious error, we cannot say that the presiding justice committed any reversible error in phrasing his charge to the jury as he did. M.R.Crim.P. 52(b).

■ Having failed to establish error in the way the presiding justice in his charge to the jury handled the matter, defendant attacks the substance of the statutory presumption, challenging it as violative of both the Due Process and Equal Protection Clauses of the 14th amendment to the United States Constitution. Since the presiding justice made clear that section 358(3) was permissive rather than mandatory, *i.e.*, that it "allow[ed]—but d[id] not require—the trier of fact to infer the elemental fact from proof by the prosecutor of the basic one and . . . place[d] no burden of any kind on the defendant," *Ulster County Court v. Allen*, 442 U.S. 140, 157, 99 S.Ct. 2213, 2224, 60 L.Ed.2d 777 (1979), due process requires only that the presumption be rational in light of the facts of the particular case.[3] *Id.* The constitutional standard of rationality demands that the presumed element be "more likely than not to flow from the proved fact on which it is made to depend."[4] *Leary v. United States*, 395 U.S. 6, 36, 89 S.Ct. 1532, 1548, 23 L.Ed.2d 57 (1969). On the facts of this case, the presumption in section 358 easily meets that standard. The inference of misappropriation naturally arising from the acting town manager's testimony was bolstered by other evidence introduced by the State. In one case, for example, a permit applicant testified that he paid $84.80 by check to defendant for a set of permits; a clerk in the town office testified that defendant delivered the check to her but then demanded, and got, $47 back in cash that he claimed was owed to the applicant as change. The applicant testified that he was not owed that change, and did not receive it.

■ Defendant's equal protection challenge invokes only the "minimum rationality" standard of review rather than strict scrutiny, because the presumption does not discriminate against a suspect class or burden a fundamental right. *See Williamson v. Lee Optical*, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955); L. Tribe, *American Constitutional Law* §§ 16(2–5) (1978). The requirement of a legitimate state purpose and rational fitting of means to ends is plainly satisfied by section 358, for the presumption acts both as a deterrent to embezzlement by government officials and as an assurance that the public fisc is tightly guarded.

---

3. By contrast, a mandatory criminal presumption, *i.e.*, one that requires the trier of fact to infer the presumed element once the basic fact is established, is judged on its face rather than as applied. *Ulster County Court v. Allen*, 442 U.S. 140, 157–60, 99 S.Ct. 2213, 2224–2226, 60 L.Ed.2d 777 (1979). Such a presumption is constitutional only if the presumed element flows beyond a reasonable doubt from proof of the basic fact. *Id.* at 166–67, 99 S.Ct. at 2229–2230. Whether a presumption is permissive or mandatory is usually determined by reference to the jury instructions. *Id.* at 158 n. 16, 99 S.Ct. at 2225–2226 n. 16.

4. Our rules of evidence go further, forbidding the presiding justice from submitting a presumption to the jury unless "a reasonable juror on the evidence as a whole, including the evidence of the basic facts, could find guilt or the presumed fact beyond a reasonable doubt." M.R.Evid. 303(b). There can be no doubt that on the facts of this case the presumption of section 358 as submitted to the jury met the standard of Rule 303(b) in addition to satisfying the requirements of due process.

Attacking the evidentiary basis of McGrath's review, defendant argues that the permit applications and cash tapes were hearsay and should not have been admitted in evidence. Defendant filled out the applications on the basis of information provided him by the applicants. As such they constitute nonhearsay statements offered against a party-opponent. *See* M.R.Evid. 801(d)(2). Such statements to be admissible against the party need not have been against his interest when he made them nor need they have been based on his personal knowledge. *See* Field & Murray, *Maine Evidence* § 801.5 at 193 (1976). "Admissions" of defendant offered in evidence by the State against defendant are not hearsay at all and can be received as substantive evidence. *Id.* Evidence at trial established that entries on the cash tapes of the Town's cash register were made in the regular course of business by clerks in the Gray town office upon receiving money from defendant and others. Since no indicia of untrustworthiness were brought to light, the cash tapes are admissible under the business records exception to the hearsay rule. *See* M.R. Evid. 803(6); *E. N. Nason, Inc. v. Land-Ho Development Corp.*, Me., 403 A.2d 1173, 1178 (1979).

Defendant assigns several other errors, including insufficiency of the evidence to support the conviction. Viewing the evidence in the light most favorable to the State, we cannot say that a rational jury could not find defendant guilty beyond a reasonable doubt of both of the crimes charged. *See State v. Brown*, Me., 410 A.2d 1033, 1034 n. 1 (1980). We have thoroughly reviewed defendant's other claims of error and find no merit in any of them.

The entry must be:

Judgments of conviction affirmed.

All concurring.