STATE of Maine

v.

David J. BRUNETTE.

Supreme Judicial Court of Maine.

Argued Sept. 20, 1985.

Decided Nov. 5, 1985.

Gene Libby, Dist. Atty., David Gregory, (orally), Alfred, for the State.

Jeffco, May & Smart, Stephen T. Jeffco, (orally), Portsmouth, N.H., for defendant.

Before McKUSICK, C.J., and NICHOLS, VIOLETTE, WATHEN, GLASSMAN and SCOLNIK, JJ.

SCOLNIK, Justice.

David J. Brunette appeals from a judgment entered on a jury verdict in the Superior Court (York County) convicting him of Gross Sexual Misconduct, 17–A M.R.S.A. § 253 (1983), Unlawful Sexual Contact, 17–A, M.R.S.A. § 255 (1983), and two counts of Endangering the Welfare of a Child, 17–A, M.R.S.A. § 554 (1983).[1] On appeal, the defendant challenges the sufficiency of the evidence to sustain his convictions and the admissibility of certain statements and documents relating, *inter alia,* to the victim's date of birth. Althought the defendant does not challenge his convictions on the ground they were obtained by the use of false testimony pertaining to the circumstances of the victim's birth, we vacate the judgments of conviction on the gross sexual misconduct and unlawful sexual contact counts for manifest error because of the reasonable likelihood that the false testimony affected the jury's verdict. We affirm the judgments on the remaining counts.

## I.

17–A M.R.S.A. §§ 253, 255 (1983) *inter alia,* require that the victim of the sexual misconduct be under the age of fourteen at the time of the occurrence. At issue here

---

1. 17–A M.R.S.A. § 253 (1983) provides in pertinent part:

> A person is guilty of gross sexual misconduct
>> 1. If he engages in a sexual act with another person, not his spouse, and
>
> . . . .
>> B. The other person has not in fact attained his 14th birthday....

17–A M.R.S.A. § 255 (1983) provides in pertinent part:

>> 1. A person is guilty of unlawful sexual contact if he intentionally subjects another person, not his spouse, to any sexual contact, and

> . . . .
>> C. The other person has not in fact attained his 14th birthday and the actor is at least 3 years older....

17–A M.R.S.A. § 554 (1983) provides in pertinent part:

>> 1. A person is guilty of endangering the welfare of a child if he knowingly ... furnishes, gives away ... to such a child [under the age of sixteen] any intoxicating liquor....

is whether the sexual misconduct occurred before the victim had attained his fourteenth birthday. The indictment alleged that the acts took place in the fall of 1982, when the defendant, the victim's Boy Scout leader, took him on two weekend trips to motels in Kittery. The victim's testimony was unclear as to the exact dates of the incidents.

At trial, the victim's mother testified that she had given birth to three children in the course of her marriage of seventeen years. She gave the victim's date of birth as November 7, 1968. The victim also testified that this was his date of birth. On the evening following the first day of the trial, the prosecutor learned from the victim's father that his wife was very upset because she had "had to fib" in answer to the prosecutor's questions about her son's birth. The father then stated his son had been adopted and was not aware of that fact. The child's biological mother, who was unknown, had apparently given him to her sister, who in turn had contacted his adoptive parents. They accepted the baby and adopted him.

The prosecutor immediately telephoned the defendant's attorney to disclose the newly discovered facts and informed the trial justice the next morning in chambers. The parties agreed to a continuance to allow the State to obtain from the State of Connecticut further records concerning the victim's date of birth. At a conference in chambers two days later, the defense counsel moved to strike the testimony of the boy and his mother pertaining to his age.

The court did not rule on the motion. The State then offered three exhibits: a copy of the victim's adoptive birth certificate [2]; an affidavit from a Connecticut Probate Court Judge who had verified the date of birth on the original birth certificate; and a copy of the defendant's birth certificate. The court admitted the exhibits over the defendant's objection but impounded the affidavit. The effect of these rulings was to allow only the two birth certificates to be presented to the jury, who did not learn of the victim's adoption.

At the conclusion of the trial, the court instructed the jury about the requirement that the victim not have attained his fourteenth birthday at the time of the gross sexual misconduct and the unlawful sexual contact. He stated that the State was required to prove that these incidents took place "prior to November 7, 1982," thereby accepting the birth date testified to by the mother. The jury returned a verdict of guilty on all counts.

## II.

 Counsel for Brunette did not raise at trial, nor does he raise on appeal, the issue regarding the impact of false testimony on the jury's verdict.[3] Ordinarily, an issue not addressed in the brief of either party and raised for the first time at oral argument is deemed waived. *Chadwick-BaRoss v. Martin Marietta Corp.*, 483 A.2d 711, 717 (Me.1984); *State v. Rusher*, 468 A.2d 1008, 1009 (Me.1983). We do not generally reach out, without the benefit of either written or oral argument by counsel,

---

**2.** The certificate bears a Connecticut Department of Health seal certifying that it is a true copy of a record filed on November 13, 1968 with the Department of Health pursuant to the General Statutes of Connecticut. The victim's date of birth is listed as November 7, 1968. Nowhere on the certificate is it shown that the child is adopted; the adoptive parents are listed in the lines calling for the parents' names. The lines concerning length of pregnancy, blood test, and the person supplying the information for the certificate are blank. On the line asking for the attendant's signature is the typed name of a medical doctor.

**3.** The defendant argues that the court's failure to strike the victim's mother's statements pertaining to his birth prevented an effective cross-examination of her testimony. We do not address whether defense counsel, by his failure to obtain a ruling on the motion, has preserved the error, if any, because he conceded at oral argument that he had made a tactical decision at trial not to cross-examine her about the newly discovered evidence. Therefore, his failure to conduct a cross-examination cannot provide a basis for error on direct appeal. *See State v. Finson*, 447 A.2d 788, 792 (Me.1982).

to decide legal contentions nowhere raised by the defendant. *See, e.g., State v. Boilard,* 488 A.2d 1380, 1391 (Me.1985). Nevertheless, in order to avoid depriving a defendant of his constitutional right to a fundamentally fair trial, and for the purpose of maintaining the basic integrity of the judicial process, we will notice "error, if error there be, that works substantial injustice, whether or not it is brought to the attention of the trial or appellate court." *State v. Bahre,* 456 A.2d 860, 864 (Me. 1983); M.R.Crim.P. 52(b); *see also State v. Rusher,* 468 A.2d at 1009. Where false testimony, whether intentionally solicited or not, may have affected the outcome of a trial, not only is the trial fundamentally unfair, but the truth-seeking function of the trial process itself is unacceptably compromised. *See United States v. Agurs,* 427 U.S. 97, 104, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976). Therefore, we must address the issue here because a conviction tainted by the use of false testimony unquestionably threatens both a defendant's constitutional right to due process of law and the basic integrity of the judicial proceedings.

A long line of United States Supreme Court decisions has established the principle that the " 'Fourteenth Amendment cannot tolerate a state criminal conviction obtained by the knowing use of false evidence.' " *Donnelly v. DeChrisoforo,* 416 U.S. 637, 646, 94 S.Ct. 1868, 1873, 40 L.Ed.2d 431 (1974), (citing *Miller v. Pate,* 386 U.S. 1, 7, 87 S.Ct. 785, 788, 17 L.Ed.2d 690 (1967)); *see, e.g., Napue v. Illinois,* 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); *Mooney v. Holohan,* 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935); *see also United States v. Bagley,* —— U.S. ——, 105 S.Ct. 3375, 3382, 87 L.Ed.2d 481 (1985). The Supreme Court has consistently held that a conviction obtained by the knowing use of perjured testimony is fundamentally

unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.[4] *United States v. Agurs,* 427 U.S. at 103, 96 S.Ct. at 2397; *see, e.g., Napue v. Illinois,* 360 U.S. at 271, 79 S.Ct. at 1178; *see also Breest v. Perrin,* 624 F.2d 1112, 1115 (1st Cir.), *cert. denied,* 449 U.S. 1020, 101 S.Ct. 585, 66 L.Ed.2d 481 (1980); *State v. Cohane,* 193 Conn. 474, 495, 479 A.2d 763, 776, *cert. denied,* —— U.S. ——, 105 S.Ct. 397, 83 L.Ed.2d 331 (1984). The same result obtains where, as is the case here, the State does not solicit the false testimony but allows it to go uncorrected when it appears. *Giglio v. United States,* 405 U.S. 150, 153, 92 S.Ct. 763, 765, 31 L.Ed.2d 104 (1972); *Napue v. Illinois,* 360 U.S. at 269, 79 S.Ct. at 1177; *cf. Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963) (suppression of material evidence favorable to accused justifies a new trial "irrespective of the good faith or bad faith of the prosecution").

 We deem it reasonably likely that the false testimony here could have affected the jury's verdict on the Gross Sexual Misconduct and Unlawful Sexual Contact counts. The mother's testimony bears directly on the issue of the victim's age. That the victim had not yet attained his fourteenth birthday is an element of both 17–A M.R.S.A. § 253 and § 255 (1983). A natural mother's testimony about her child's date of birth has particular credibility. In contrast, the adoptive mother lacked personal knowledge of the victim's date of birth and the record is silent about how much time had elapsed between his birth and delivery to his adoptive parents. In view of the fact that the sexual misconduct allegedly occurred only six to eight weeks before the victim's fourteenth birthday, had it been apprised of the true facts, it is reasonably likely that the jury would have

---

**4.** The Court most recently noted that the standard of review applicable to the knowing use of perjured testimony is equivalent to the *Chapman* harmless error standard. *United States v. Bagley,* 105 S.Ct. at 3382 n.9; *see Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d

705 (1967); *see also Connecticut v. Johnson,* 460 U.S. 73, 103 S.Ct. 969, 974 n.9, 74 L.Ed.2d 823 (1983) (plurality opinion, Blackman, J.) (whether a federal constitutional error can be harmless is a federal question).

concluded that a reasonable doubt existed as to whether the victim had in fact not yet attained his fourteenth birthday. That the prosecution did not solicit the false testimony and immediately and fully informed both the defense counsel and the presiding justice does not change our analysis. Nor does the presence of the Connecticut birth certificate confirming the victim's birth date as November 7, 1968, eliminate the difficulty with the mother's testimony given as if she was the natural parent. The fact remains that the jury was never informed of the newly discovered information relating to the victim's date of birth. The impact of the false testimony, therefore, was the same whether the district attorney's silence was the result of a deliberate deception or a good faith attempt to protect the victim.[5]

▇▇▇ The State further argues that the admissibility of the mother's statements should be viewed separately from their falsity, because the truth or falsity of the statements goes only to her credibility as a witness. We disagree. Even assuming, without deciding, that the statements were independently admissible,[6]

> [t]he principle that a state may not knowingly use false ... testimony to obtain a tainted conviction, implicit in any concept of ordered liberty, does not cease to apply merely because the false testimony goes only to the credibility of a witness. The jury's estimate of the truthfulness

and reliability of a given witness may well be determinative of guilt or innocence....

*Napue v. Illinois*, 360 U.S. at 269, 79 S.Ct. at 1177. When the testimony is in any way relevant to the case, a prosecutor has the responsibility to correct what he knows to be false and elicit the truth. *People v. Savvides*, 1 N.Y.2d 554, 557, 136 N.E.2d 853, 854–855, 154 N.Y.S.2d 885, 887 (1956), *cited in id.* 360 U.S. at 269–270, 79 S.Ct. at 1177–78. As the court stated in *Savvides*, "[t]he administration of justice must not only be above reproach, it must also be beyond the suspicion of reproach." 1 N.Y.2d at 556, 136 N.E.2d at 855, 154 N.Y. S.2d at 887. Because we find that the false testimony tainted the convictions of Gross Sexual Misconduct and Unlawful Sexual Contact, even though its introduction was not knowing and intentional, we conclude that the judgment of conviction on those counts must be vacated.

▇▇▇ We now turn to the impact of the false testimony on the remaining two counts of Endangering the Welfare of A Child. One element of 17–A M.R.S.A. § 554 (1983) is that the victim be under the age of sixteen. However, the defendant conceded at oral argument that the jury could have inferred from the victim's appearance that at the time of the incident his age was at most fifteen. A jury may properly observe a person's appearance as evidence of age under the doctrine of "autop-

---

**5.** It cannot be said that the jury instructions diminished the prejudicial effect of this testimony on the jury verdict. Instead of instructing the jury to disregard the false testimony, the presiding justice appeared to accept as accurate the mother's testimony regarding the victim's date of birth. Since, from the jury's perspective, the instruction was based in part on the mother's unstricken false testimony, there is a reasonable likelihood that this evidence affected the verdict. We need not decide whether the unpreserved error as to this jury instruction, if error there was, constituted obvious error. *See* M.R.Crim.P. 52(b).

**6.** In view of the fact that the prosecution on retrial in all likelihood will again offer in evidence the statements pursuant to M.R.Evid. 803(19), judicial economy dictates that we point

out that this hearsay exception does indeed permit the victim's mother to testify as to the reputation among members of his adoptive family concerning his birth. Under the rule, however, only evidence of reputation is admissible to establish the date of birth. Here, the adoptive mother did not testify that it was reputed among family members that the victim's date of birth was November 7, 1968, but she testified instead from her purported personal knowledge. *Cf. State v. Tetrault*, 78 N.H. 14, 95 A. 669 (1915) (court never reached issue whether hearsay exception for matters of family history was made inapplicable by fact of child's adoption, but parents' statements about her birth date were admissible because source of information fully disclosed).

tic proference." 4 J. Wigmore, *Evidence* § 1154 (1972); *see, e.g., Commonwealth v. Hollis,* 170 Mass. 433, 49 N.E. 632 (1898) (jury may consider a child's appearance in determining whether she was under sixteen); *cf. State v. Bickford,* 497 A.2d 138 (Me.1985) (jury entitled to rely on its own observations comparing boy's characteristics and general demeanor with defendant's to assist in determination that defendant was at least three years older); *State v. Geisinger,* 479 A.2d 1315, 1316 (Me.1984). We therefore conclude that it was not reasonably likely that the false testimony affected the jury's verdict on the two counts of Endangering the Welfare of a Child. *Cf. Napue v. Illinois,* 360 U.S. at 269, 79 S.Ct. at 1177.

### III.

Although we have determined that the judgments of conviction for gross sexual misconduct and unlawful sexual contact must be vacated because of false testimony, it is necessary that we address the admissibility of the adoptive birth certificate, accompanying affidavit, and copies of motel receipts because these claims of error require consideration in relation to the remaining counts. In addition, because these issues are likely to arise on retrial, judicial economy dictates that we furnish guidance regarding them.

Over the defendant's objection, the court received in evidence the victim's adoptive birth certificate. Brunette argues that the adoptive birth certificate, because of its untrustworthiness, is not admissible under the exceptions to the hearsay rule for public records in M.R.Evid. 803(8) or for records of vital statistics in M.R.Evid. 803(9). We disagree and find the certificate admissible under M.R.Evid. 803(9) as a record of a vital statistic.

7. The historical note following Conn.Gen.Stat. Ann. § 7–48 demonstrates that the duty to report existed well before 1968.

8. The defendant's reliance on *State v. Ebelt,* 121 N.H. 143, 427 A.2d 29 (1981) is misplaced. The issue there was the relevance of a birth certificate in establishing the date of birth of an

■ The trial court's determination whether a statement is admissible within an exception to the hearsay rule will not be overturned except for an abuse of discretion. *State v. Williams,* 395 A.2d 1158, 1162–63 (Me.1978). M.R.Evid. 803(9) provides an exception to the hearsay rule for:

Records or data compilation in any form, of births, deaths, or marriages, if the report thereof was made to a public office pursuaⁿt to requirements of law.

The record here is silent as to Connecticut requirements of law for reports of birth. But the seal affixed to the birth certificate certifies that it is a true copy of a record filed with the State pursuant to the General Statutes of Connecticut. Pursuant to 16 M.R.S.A. § 402 (1983) we take judicial notice of the Connecticut statute, Conn.Gen. Stat.Ann. §§ 7–48, 7–49 (1972), that requires a report of birth to be made within ten days by the attending physician to a public office.[7]

Rule 803(9) does not distinguish between adoptive and original birth certificates. The defendant's arguments as to the trustworthiness of the certificate go more properly to the weight to be accorded the information contained therein than to the certificate's admissibility.[8] *See* Field & Murray *Maine Evidence,* § 803.9 at 219–20 (1976). Accordingly, the presiding justice properly exercised his discretion in admitting the birth certificate.

■ Brunette also argues that the affidavit from the Connecticut Probate Judge, verifying the contents of the original birth certificate, is inadmissible. An affidavit that merely states "the existence of a record and what it purports to show is never receivable as evidence, unless made so by statute." *Steeves v. Irwin,* 233 A.2d

adopted prosecutrix who had gone by a slightly different name and celebrated a different birthday before the certificate was discovered. The defendant here did not object to the relevance of the birth certificate, nor was the victim's identity at issue.

126, 129 (Me.1967). Although the court below considered the inadmissible affidavit in determining the preliminary question of admissibility of the adoptive birth certificate,[9] because the affidavit was impounded and did not go to the jury, it was not, in legal effect, received in evidence. Accordingly, the defendant's claim that the admission of the affidavit was prejudicial is without merit.

### IV.

To corroborate the victim's testimony about the dates of the incidents alleged in the indictment, the State introduced photocopies of the defendant's motel guest registration card, his charges and payment, and his credit card receipt from the Stagecoach Inn in Kittery. The defendant argues that the court erred in admitting the records under the business record exception to the hearsay rule, M.R.Evid. 803(6), absent a proper foundation. We disagree.

■ To fall within the business record exception to the hearsay rule, the testimony of a qualified witness[10] must show that:

1) the record was made at or near the time of the transaction by a person with knowledge of the event;

2) the record was kept in the regular course of business; and

3) the business had a regular practice of making such records.

*Chadwick-BaRoss v. Martin Marietta Corp.*, 483 A.2d at 716; *E. N. Nason, Inc. v. Land-Ho Development*, 403 A.2d 1173, 1178 (Me.1979); M.R.Evid. 803(6).

■ The testimony of the Stagecoach Inn general manager provided a sufficient foundation for the admission of the registration records pursuant to the three-point test. He testified that guest registration and credit card records are regularly filled out at the time of the registration transaction between the desk clerk and the guest, and that they are kept in the regular course of business.

It is also essential that no lack of trustworthiness appear in the source of information or circumstances of preparation of the business records. *E.N. Nason, Inc. v. Land-Ho Development Corp.*, 403 A.2d at 1178. Whether to exclude business records on the basis of untrustworthiness is within the discretion of the trial court. *Id.* at 1179. A finding that a record is untrustworthy is usually predicated on evidence of alteration after the record has left the control of the preparer or custodian; of some motivation by the preparer to misrepresent or misstate results in the record; or of preparation of the record in anticipation of litigation. *State v. Therriault*, 485 A.2d 986, 996 (Me.1984) (citations omitted).

■ Although the manager testified that no originals of the defendant's registration or credit card receipts existed at the time of trial, the loss of the originals does not compel a finding that the source of the information or circumstances of their preparation were untrustworthy. Under M.R. Evid. 1004(1), the original is not required and other evidence of the contents of a writing is admissible if all originals are lost or have been destroyed, as is the case here. The photocopy of Brunette's guest registration card bearing his signature included an arrival date of "9–24," with the year obscured. The folio attached to the card bore the same date, also without the year. But the folio did note the cost of the room, which was identical to the cost shown on the attached credit card slip dated "9/25/82" and bearing the notation "signature on file." There is no evidence here to suggest that the originals or the photocopies had been altered or that the preparer

---

**9.** M.R.Evid. 104(a) authorizes a court to determine the preliminary questions of admissibility without being bound by the rules of evidence.

**10.** That the Stagecoach Inn general manager had only been on the job for two weeks did not destroy his ability to testify as a "qualified witness." His familiarity with the regular guest registration process at the Inn, which was substantially the same as that of four other inns at which he had worked within the preceding seven years, was sufficient to establish his qualifications.

had any motivation to misrepresent the information on the original registration forms. Finally, although the photocopies were made in anticipation of litigation, the original records were clearly not prepared for that purpose. Accordingly, we conclude that the Superior Court acted well within its discretion in finding these records admissible under Rule 803(6).

The entry is:

Judgments of conviction for the two counts of endangering the welfare of a child affirmed.

Judgments of conviction on the gross sexual misconduct and the unlawful sexual contact counts vacated; remanded to the Superior Court for further proceedings consistent with the opinion herein.

All concurring.